**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                    )
SEAN M. SULLIVAN,                   )
                                    )
            Plaintiff,              )
                                    )      Civil Action
v.                                  )      No. 19-11436-PBS
                                    )
ANDREW M. SAUL,                     )
                                    )
Commissioner of the                 )
Social Security Administration,     )
                                    )
            Defendant.              )
_____)
```

**MEMORANDUM AND ORDER**

JULY 29, 2020

Saris, D.J.

**INTRODUCTION**

Plaintiff Sean M. Sullivan brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of a final decision denying his application for Supplemental Security Income ("SSI") and Social Security Disability Insurance benefits ("SSDI"). Plaintiff suffers from chronic myeloid leukemia, a slow-growing blood cancer that can worsen over time.

Plaintiff contends that the Administrative Law Judge ("ALJ") erred by, among other defects, discounting the opinion of his treating physician and ignoring testimony from the vocational expert. For the reasons below, the Court **ALLOWS**

1

Plaintiff's motion to reverse (Docket No. 21) and **DENIES** Government's motion to affirm (Docket No. 15).

## FACTUAL BACKGROUND

The following facts are taken from the administrative record.

### I. Education and Occupational History

Plaintiff initially applied for SSI/SSDI on August 7, 2017, when he was 52 years old. He completed high school but did not attend college or a vocational training program. Plaintiff had previously worked as a union carpenter for twenty-eight years. In this role, he routinely lifted 50 or more pounds of materials across construction sites. The job also required him to work on top of buildings.

### II. Medical History

On July 10, 2017, Plaintiff presented in the emergency department at Massachusetts General Hospital with chest pain, shoulder pain, and abdominal pain. Plaintiff spent two days in the hospital.

On July 13, 2017, Plaintiff was diagnosed with chronic myeloid leukemia.[1] He immediately began dasatinib chemotherapy treatment under the care of Dr. Andrew Brunner. Dasatinib is a

---

[1] Chronic myeloid leukemia is a cancer of the blood cells "characterized by the excessive buildup of relatively mature but abnormal white blood cells." Milward v. Acuity Specialty Prod. Grp., Inc., 639 F.3d 11, 16 (1st Cir. 2011).

2

tablet taken daily to treat chronic myeloid leukemia and can result in serious side effects, including fatigue. At the July 13 appointment, Plaintiff's baseline ECOG[2] score was zero, indicating that he was "[f]ully active" and "able to carry on all pre-disease performance without restriction." Administrative Record ("A.R.") 334.

During the following two weeks, Plaintiff returned to his carpentry job. In his notes from a follow up appointment on August 1, 2017, Dr. Brunner wrote that Plaintiff said he had hung sixty sheets of dry wall at work. Plaintiff later explained that he was joking and that hanging sixty sheets in a day was not possible for anyone, much less a fatigued person with leukemia. Dr. Brunner noted that Plaintiff was "tolerating" dasatinib "well" but recommended that Plaintiff take time off work until his blood counts and energy level improved. A.R. 340.

On August 7, 2017, at an appointment with Jenna Athena Moran, CNP, Plaintiff was fatigued, and the nurse practitioner recommended that he continue to refrain from working until he had more energy.

---

[2] The Eastern Cooperative Oncology Group ("ECOG") Scale of Performance Status is a five-point scale that describes a Plaintiff's "level of functioning in terms of their ability to care for themself, daily activity, and physical ability." ECOG Performance Status, http://ecog-acrin.org/resources/ecog-performance-status (last visited July 27, 2020).

On August 11, 2017, Plaintiff visited with Jenna Athena Moran, CNP, displaying symptoms of fatigue and ringing in his left ear. On August 15, 2017, Plaintiff was seen by Dr. Brunner, and he was still fatigued despite remaining out of work. He was diagnosed with GI discomfort and tinnitus, or low ringing, in his ear, both side effects of the dasatinib chemotherapy treatment. At this and each previous follow up visit, Plaintiff had an ECOG score of zero.

On September 5, 2017, Plaintiff visited Dr. Brunner for his fifty-day follow up appointment, and was diagnosed with fatigue, chronic back pain, tinnitus, and mouth pain. However, his energy levels were "slightly improved" and his abdominal pain had subsided. A.R. 466.

On September 18, 2017, Plaintiff was seen by Meghan K. Bergeron, CNP, and he had sharp abdominal pain, fatigue, and chronic back pain. He planned to return to work in a less physically demanding role. On October 6, 2017, Plaintiff reported continued chronic back pain, but stable energy levels and no abdominal pain.

On November 3, 2017, Plaintiff visited Dr. Brunner, and reported fatigue, persistent acute lower back pain, dyspnea on exertion (shortness of breath), diarrhea, tinnitus, and facial pain. Plaintiff had "tried to do some work but developed sciatica pain which he state[d] [was] 9/10 and persistent." A.R.

4

489. His energy levels, though, continued to improve. On December 1, 2017, Plaintiff followed up with Dr. Brunner, and displayed improved energy and activity level, although he continued to have tinnitus, loose stools, and dyspnea on exertion.

At an appointment on January 9, 2018, Dr. Brunner diagnosed Plaintiff with mild ongoing fatigue while walking or climbing stairs, and improved tinnitus. On February 6, 2018, Plaintiff visited Dr. Brunner, and was diagnosed with ongoing fatigue, limited exercise capacity climbing stairs, and chronic back pain.

On May 8, 2018, Plaintiff was seen by Meghan K. Bergeron, CNP, and he presented mild ongoing fatigue, dyspnea on exertion, occasional left thigh numbness, chronic back pain, and recurring shoulder pain. On June 22, 2018, Plaintiff again visited Meghan K. Bergeron, CNP, and he continued to feel well overall, although he presented mild fatigue, dyspnea on exertion, right shoulder pain, chronic back pain, and occasional left thigh muscle numbness. At this and all previous appointments, Plaintiff's ECOG score was zero.

### III. Treating Physician Medical Opinion

On March 1, 2018, Plaintiff's treating physician, Dr. Brunner, provided his medical diagnosis and observations. Dr. Brunner stated that Plaintiff "was diagnosed with Chronic

Myeloid Leukemia, for which he receives chemotherapy, and will continue to do so for the foreseeable future to manage his disease." A.R. 534. Dr. Brunner explained that Plaintiff "experiences significant and chronic symptoms, including fatigue, unsteadiness on his feet, and risk of bleeding." Id. Additionally, Plaintiff's "immune system is compromised and he is at an elevated risk for infection." Id.

Dr. Brunner urged "that any assistance for which [Plaintiff] is eligible be provided to him given his inability to work in his field." Id.

**IV. State Agency Consulting Medical Opinions**

On August 7, 2017, Plaintiff filed a claim for disability based on leukemia and attendant symptoms. As part of that application, Dr. Mary Connelly, M.D., evaluated Plaintiff on September 12, 2017. Dr. Connelly's evaluation listed Plaintiff's medically determinable impairment as leukemia (primary and severe) and the primary symptom as "pain." A.R. 78. Dr. Connelly concluded Plaintiff was "not disabled" after determining that his impairment was not so severe as to prevent him from engaging in substantial gainful activities. Dr. Connelly did not evaluate Plaintiff's ability to perform past relevant work or engage in other work.

Upon reconsideration on December 19, 2017, Dr. Linda Margiloff, M.D., evaluated Plaintiff and affirmed the initial

6

determination regarding Plaintiff's functional capacity. Like Dr. Connelly, Dr. Margiloff listed leukemia as Plaintiff's primary impairment, and noted it was severe. Dr. Margiloff also listed Plaintiff's symptom as "pain." Dr. Margiloff determined Plaintiff was "not disabled," and did not assess Plaintiff's vocational factors.

## Procedural History

### I. Applications

In Plaintiff's August 7, 2017 application for SSDI and SSI, he alleged a disability onset date of July 10, 2017. Both applications were denied initially and again upon reconsideration.

### II. ALJ Hearing

Plaintiff requested an ALJ hearing, which was conducted in front of ALJ Daniel J. Driscoll on July 31, 2018, with counsel and a vocational expert present

At the hearing, Plaintiff's counsel explained that Plaintiff suffered from chronic myeloid leukemia, and was taking dasatinib chemotherapy as treatment. Counsel identified side effects of this treatment, including fatigue, which prevented Plaintiff from working as a carpenter for the previous twelve months. Plaintiff expects to continue taking the medication daily as long as it remains effective at preventing the spread of cancer cells. Plaintiff testified that due to his medical

7

condition, he was "having a hard time keeping a whole day together," and he felt "physically drained." A.R. 46. Plaintiff described trouble sitting for more than thirty minutes, and that he became fatigued walking around for any period of time. In his present state, Plaintiff could only lift and carry thirty pounds.

Regarding Plaintiff's disability claim, the ALJ asked whether fatigue was the "sole reason" limiting his capacity to work. A.R. 49. Plaintiff responded that he felt "rundown" and experienced "shortness of breath" as if his "energy [was] sucked right out of [him]." Id. The ALJ said that returning to carpentry work was "not even on the table." Id. He asked Plaintiff whether he could work another part-time job that did not require exertion other than being on his feet for six hours. Plaintiff responded that he would "have to talk to [his] doctors" but that he was not working because of his fatigue and heightened risk of severe bleeding and infections. A.R. 55.

The ALJ then proposed a number of hypothetical situations to the vocational expert, Thomas E. Bott, to assess whether a person of Plaintiff's age, education, and work experience could perform work in the national economy with various limitations. In the first hypothetical, Bott testified that a person with limited ability to climb stairs, balance, or work on slippery or uneven surfaces could work as a fast food worker, cashier, or

sales attendant. In the second hypothetical, a person with the same physical limitations who cannot come into close contact with other people could work as a price marker, housekeeping cleaner, or routing clerk. In the third hypothetical, a person with the previous limitations and unrelenting fatigue could not perform any jobs. Finally, the fourth hypothetical person who would be absent from work three or more days per month could not retain any job on a full-time basis.

### III. ALJ Decision

On August 16, 2018, the ALJ issued a decision finding Plaintiff not disabled. The ALJ followed the five-step process for determining disability, and, at step three, found that Plaintiff suffered from myeloid leukemia in remission, "significantly limit[ing] the ability to perform basic work activities[.]" A.R. 21. At step five, the ALJ found that Plaintiff "has the residual functional capacity [RFC] to perform light work" and can occasionally climb ramps and stairs, balance, crouch, and kneel, but he cannot climb ropes, ladders, or scaffolds, and he must avoid exposure to hazards like moving machinery, unprotected heights, and uneven surfaces. A.R. 22.

In conducting his analysis, the ALJ "found Dr. Brunner's letter to be persuasive given his treating specialty and extensive contact with the claimant." A.R. 23. Furthermore, the ALJ "did not find the opinions of the reviewing Disability

Determination Services' (DDS) medical consultants to be persuasive" because "[t]heir opinions failed to consider the claimant's credible complaints of fatigue in the context of ongoing chemotherapy treatment." A.R. 24. Nonetheless, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence[.]" A.R. 23. The ALJ concluded that the Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." A.R. 25.

Plaintiff appealed the ALJ's decision to the Appeals Council, which denied his request on April 24, 2019.

## **Legal Standards**

### **I.   Statutory and Regulatory Framework**

Under the Social Security Act, a claimant seeking benefits must prove that "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To meet this definition, a person must have a severe impairment that renders him unable to do his past relevant work "or any other substantial gainful work that exists in the national economy." 20 C.F.R. § 416.905(a).

ALJs employ a five-step sequential evaluation process to assess a claim for disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(1)(4)(i)-(v). The evaluation may be concluded at any step if the ALJ determines that the claimant is or is not disabled. Id. § 404.1520(a)(4).

> The steps are: (1) if the applicant is engaged in substantial gainful work activity, the application is denied; (2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; (3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; (4) if the applicant's [RFC] is such that he or she can still perform past relevant work, then the application is denied; (5) if the applicant, given his or her [RFC], education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The Social Security Administration has promulgated a new regulation that affects claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c; see also Purdy v. Berryhill, 887 F.3d 7, 13 n.8 (1st Cir. 2018). The new regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates each medical source according to "a uniform

11

set of considerations." Purdy, 887 F.3d at 13 n.8. The "most important factors" are "supportability" and "consistency" and the ALJ must explain how he considered those factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ also considers other factors such as the source's relationship with the claimant and specialization, but is not required to explain how he considered those factors. Id. § 404.1520c(b)-(c).

## II.  Standard of Review

A reviewing court determines "whether the [agency's] final decision is supported by substantial evidence and whether the correct legal standard was used." Seavey, 276 F.3d at 9. The Court reviews the ALJ's conclusions of law de novo. Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). "Failure of the [ALJ] to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with the sufficient basis to determine that the [ALJ] applied the correct legal standards are grounds for reversal." Weiler v. Shalala, 922 F. Supp. 689, 694 (D. Mass. 1996) (citing Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982)).

For findings of fact, "even if the record arguably could justify a different conclusion," the Court must affirm the decision "so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence exists "if a reasonable

mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Purdy, 887 F.3d at 13 (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). The ALJ may not, however, derive its findings of fact "by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues that the ALJ's RFC determination with respect to his physical capacities was not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ erred in his evaluation of Dr. Brunner's opinion and the vocational expert's testimony by failing to properly consider the intensity, persistence, and limiting effects of Plaintiff's chronic fatigue. Plaintiff is correct.

To start, the ALJ's evaluations of the medical opinions conformed to the new regulatory framework. The ALJ was not required to give dispositive weight to Dr. Brunner's letter and conclusion that Plaintiff was unable to work "in his field," even though Dr. Brunner was his treating physician. Nonetheless, the ALJ assessed Dr. Brunner's opinion to be persuasive. As required by regulation, the ALJ based this assessment on the supportability and consistency of Dr. Brunner's opinion. The ALJ additionally found that the opinions of the reviewing Disability

13

Determination Services medical consultants, Drs. Connelly and Margiloff, were not persuasive because the opinions failed to consider Plaintiff's complaints of fatigue as a result of ongoing chemotherapy treatment, and were therefore neither supportable nor consistent with Plaintiff's medical record.

Nonetheless, the ALJ then ruled that although the Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms" of fatigue, weakness, and low energy, the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence[.]" A.R. 23. This RFC finding was not supported by substantial evidence in light of the ALJ's earlier findings crediting both Dr. Brunner and Plaintiff's testimony.

The Plaintiff testified that he cannot hold a job or maintain a regular schedule because of medication he will continue to take for the foreseeable future. These contentions are supported by medical records documenting chronic fatigue at every medical appointment, even after he stopped working. Indeed, the ALJ found Plaintiff's "complaints of fatigue" to be "credible" when rejecting the opinions of the state doctors. A.R. 24.

The Avery factors also do not support the ALJ's RFC determination. ALJs "will consider" the following six Avery

14

factors to assess a claimant's subjective reports of symptoms, including pain:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain [or other symptom];
2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
3. Type, dosage, effectiveness, and adverse side-effects of any pain [or other] medication;
4. Treatment, other than medication, for relief of pain [or other symptom];
5. Functional restrictions; and
6. The claimant's daily activities.

Pires v. Astrue, 553 F. Supp. 2d 15, 22 (D. Mass. 2008) (citing Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986)). As discussed above, Plaintiff described his functional restrictions to preclude full-time employment. Significantly, Plaintiff will remain on dasatinib indefinitely and reports significant side-effects from that medication, including chronic fatigue.

The ALJ's erroneous RFC finding caused him to improperly discount relevant testimony from the vocational expert. The ALJ correctly noted that Bott testified that a hypothetical person of Plaintiff's age, education, and work experience could perform work in the national economy despite limited or no ability to climb stairs, balance, work on slippery or uneven surfaces, or work in close proximity to other people. However, Bott further testified that the same hypothetical person, who additionally has unrelenting fatigue or who would be absent from work three

15

or more days per month, could not retain any job on a full-time basis. Per Plaintiff's testimony and Dr. Brunner's medical opinion, Plaintiff fits that description because he experiences chronic fatigue and cannot maintain a consistent schedule.

The Government fairly points out that Plaintiff scored "zero" on the ECOG test at every medical appointment, indicating that he is "[f]ully active, [and] able to carry on all pre-disease performance without restriction." ECOG Performance Status, http://ecog-acrin.org/resources/ecog-performance-status (last visited July 22, 2020). Additionally, the Plaintiff displayed improved energy levels at fifty days, three months, four months, and eleven months after starting treatment.[3] However, these do not amount to substantial evidence of non-disability in light of the treating physician's "persuasive" opinion documenting "significant and chronic symptoms," the Plaintiff's "credible" testimony, and the expected side effects of Plaintiff's medication under Avery. A.R. 24, 534.

Viewing the record as a whole, the ALJ's RFC determination and ensuing conclusion of "not disabled" cannot be squared with

---

[3] The ALJ also cited that Plaintiff reported hanging sixty sheets of drywall after his diagnosis. A.R. 23. Plaintiff explained in his administrative appeal brief and again to this Court that he was joking, as hanging sixty sheets of drywall would be an impossible feat even for a healthy person. The Government does not contest this explanation. Evidence related to this portion of Dr. Brunner's medical report is not substantial evidence supporting the ALJ's RFC.

his assessment of the medical opinions in the record and of Plaintiff's credible testimony about his own limitations. The ALJ's conclusion of "not disabled" was not supported by substantial evidence.

The ordinary course if an ALJ "has not considered all relevant factors" is remand to the agency for further consideration. Seavey, 276 F.3d at 11. However, in the "unusual case" where "the evidence and law compel[]" a finding of disability, the Court may reverse the Commissioner and grant an outright award of benefits. Id. In light of the ALJ's determinations to credit the opinion of Dr. Brunner and the testimony of Plaintiff regarding the side effects of his medication, the record admits of only one conclusion – that Plaintiff is disabled. Furthermore, Plaintiff is a single father who spent decades working as a union carpenter and is struggling to make ends meet. Where remand for further consideration would be an empty gesture, the Court will not delay benefits longer than necessary.

## ORDER

For the reasons above, the Court **ALLOWS** Plaintiff's motion to reverse (Docket No. 21) and **REMANDS** the case for entry of an order awarding disability benefits. The Court **DENIES** the Government's motion to affirm (Docket No. 15).

17

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
United States District Judge